### United States District Court For The District of Columbia

| | |
|---|---|
| Mwata Dyson | ) |
| 453 N. St. NW | |
| Washington, D.C. 20024, | |
| | ) |
| *Plaintiff,* | Civil Action No._____ |
| v. | |
| | ) |
| Dutko|Ragen Homes & Investments, | |
| KW United d/b/a Keller Williams | ) |
| 105 W. Broad Street, Suite 200 | |
| Falls Church, VA 22046, | ) |
| | |
| And | ) |
| | |
| Northern Virginia Management | |
| Pros. Com  d/b/a Real Property Management Pros | |
| 1001 19th Street North Suite 1200 | ) |
| Arlington, VA 22209-000, | |
| | |
| | ) |
| And | |
| | |
| | |
| Kang Frances aka Frances Kang | ) |
| 5022 W Avenue N Ste 102 | |
| Palmdale, California 93551-5757, | |
| | |
| And | ) |
| | |
| Co/Owner | |
| Kang Frances Living Trust | |
| 5022 W Avenue N Ste 102 | ) |
| Palmdale, California 93551-5757, | |
| | |
| And | |
| | |
| | ) |
| Marc Blackwood | |
| President | |
| Northern Virginia Management | |
| Pros. Com d/b/a Real Estate Property Management | ) |
| Pros | |

1

14095 Dave's Store Lane
Gainesville, VA 20155,                                    )


And                                                       )


C. H. Realty, Inc.
12125 Heritage Park Circle                               )
Silver Springs, MD 20906,


                                                         )

        *Defendants.*
**************************************************************************

# COMPLAINT

### (Race Discrimination in the Leasing of Housing)

### Introduction

1.      Plaintiff, Mwata Dyson (an African American, a member of a protected class), by and through his undersigned attorneys, Donald R. Huskey of the Law Offices of Donald R. Huskey, L.L.C., and Governor Jackson, III of the Law Office of Governor Jackson, III, L.L.C., hereby sues Defendants Northern Virginia Management Pros. Com d/b/a Real Property Management Pros, Frances Kang aka Kang Francis, Marc Blackwood, Dutko|Ragen Homes & Investments, KW United d/b/a Keller Williams, and C. H. Realty, Inc., pursuant to the Fed.R. Civ. P. 8 and the Fair Housing Act, §42 U.S.C. §3613 (a)(1)(A), and in furtherance of Plaintiff Dyson's Complaint, he states as follows:

### Jurisdiction

2.      With respect to the federal claims asserted herein, this Court's jurisdiction is invoked pursuant to §42 U.S.C. 3613 (a)(1)(A) for the violation of Plaintiff Dyson's federal civil rights.

2

**Venue**

3.        Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391(b), §1391(c), 42

U.S.C. §2000e-5(f)(3) and 5 U.S.C. §7703 (b)(2) as the Plaintiff was residing in the District of

Columbia when the lease application was declined, at the time of the injury.

**Parties**

4.        Plaintiff, Dr. Mwata Dyson, is an African American physician, 49 years of age,  a

citizen of the District of Columbia who resided at 453 N. St. NW, Washington, D.C. 20024 at the

time of injury, and licensed to practice medicine in the District of Columbia and the State of

Virginia. His first name is Nigerian and means, "sensible." At all times relevant to this

action, Plaintiff Dr. Dyson, an anesthesiologist with over 21 years of experience, was a suitable,

financially responsible, potential tenant when he applied for the leasing of housing located at

7978 Vigne Court, Vienna, Virginia, 22182. Following his approval, he was subsequently

declined the leasing opportunity in August 2021 by the Defendants, their agents, servants, and

employees because of Plaintiff Dyson's race during a period in which he was attempting to house

his family, including one young child who is not eligible for the COVID-19 vaccine, during a

grave time when deaths and hospitalizations due to the COVID-19 Delta variant are more

transmissible than the common cold. People who are homeless are particularly vulnerable.

Following the act of racial discrimination by the Defendants, Dr. Dyson timely filed a complaint

with the Secretary of Housing within the statutory time period set forth in the Fair Housing Act,

42 U.S.C. §3613(a)(1)(a). The basis of Dr. Dyson's timely filed complaint with the Secretary of

Housing was a violation by the Defendants of the Fair Housing Act by discriminating on the basis of race in the

leasing of housing which is prohibited by 42 U.S.C. §3604 ("it shall be unlawful to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.")

5.    Dr. Dyson is a graduate of Hampton University, Columbia University, University of Illinois at Chicago, and the Rosalind Franklin University of Medicine and Science. He previously held medical licenses in New York, Maryland, California, Arizona and Oregon. He has two minor children.  Prior to this incident, Plaintiff Dyson and his family were previously exposed to the raw

underbelly of racism on April 30, 2019, when Dr. Dyson's six-year-old son was called a "nigger" and was physically threatened by a white classmate at Horace Man Elementary School (Washington, D.C) who told Plaintiff Dr. Dyson's six-year-old son that he would get a gun and shoot him. The white first grader said, " I'm going to go home and get my father's gun and come back and shoot you."  The son of Dr. Dyson told the press in an interview, "I'm sad and I'm scared." The incident was confirmed as stated by Dr. Dyson's son after an internal investigation. Thus, this racial incident which is the subject of this lawsuit has further traumatized Plaintiff Dyson and his children. As a result of the Fair Housing Act violations by these Defendants and their intentional conduct, Plaintiff Dr. Dyson experienced non-economic and economic damages, including but not limited to great mental distress, depression, loss of sleep, a feeling of

hopelessness, and embarrassment, past, present, and future economic damages including the cost of alternative housing, loss of income, moving and storage expenses, and other related expenses which are ongoing. His children experienced great sadness and a feeling of despair. Racism, or discrimination based on race or ethnicity like the Plaintiff and his family experienced, is a contributing factor to the onset of mental illness. It is also responsible for increasing disparities in physical and mental health among Blacks, indigenous citizens, and other people of color. Racism caused Dr. Dyson and his sons' trauma and such trauma can lead to serious mental health issues.  In 2020, Sandra L. Shullman, Ph.D, President of the American Psychological Association said, "We are living in a racist pandemic which is taking a heavy psychological toll on our American citizens. The consequences are dire."

6.      Defendant Northern Virginia Property Management Pros Com., L.L.C. d/b/a Real Property Management Pros (hereinafter RPMP) is a licensed real estate broker with sales and leasing agents in the State of Virginia with an office address located at 1001 19th Street North, Suite 1200, Arlington, Virginia 22209. The initial certificate with number 0226022507 was issued on August 11, 2010, with an expiration date of August 31, 2020. This Defendant approved, and then subsequently declined the leasing of housing located at 7978 Vigne Court, Vienna, Virginia, 22182. This Defendant did so maliciously and with reckless disregard for the well-being of the Plaintiff and his sons, and further did so in July and August 2021 through their agents, servants, and employees on account of Plaintiff Dyson's race. This Defendant, and its agents, servants, and employees (including Dana Woods, Real Estate Assistant) engaged in prohibited activities and pretextual conduct for racial discrimination against Dr. Dyson, an African American and member of a protected class, by applying different rental terms for Dr.

Dyson's tenancy such as (1) not showing the property to Plaintiff Dyson before he signed the lease, (2) requiring him to submit a resume as a part of the leasing process, (3) requiring Plaintiff Dyson to interview with the owner in which she questioned (irrelevantly) when he had last practiced medicine, (4) requiring Plaintiff Dyson to write a letter stating, "why he was worthy to rent the property" for the owner after the lease was approved and then declined, (5) approving and requiring Plaintiff Dyson to execute the lease and pay a fee for the unit without leasing to him, (6) blocking Plaintiff's online account set up by this Defendant to pay rent before he could move in without any explanation, thereby denying the Plaintiff the ability to pay the first month's rent despite Plaintiff offering to pay the first month's rent in cash, (7) requiring Plaintiff Dyson to change the utilities to his name and take out a policy of renter's insurance, (8) failing to timely return Plaintiff's calls and emails (i.e. "ghosting him") within days prior to the move-in date, and (9) unilaterally, abruptly, and in a discriminatory fashion cancelling Plaintiff's approval of the opportunity to lease only twelve hours prior to the move-in date without providing any explanation to the Plaintiff, and only offering him the comment by the owner that "no explanation was necessary."

7.    Defendant RPMP advertises an approval process applicable to non-minority leasing applicants requiring the following steps in accordance with industry standards: (1) to not require a personal interview or have contact with the owner, (2) to show the property before the lease is signed, (3) to obtain approval of the lease based on financial status, (4) to advise of the pet policy for non-service animals, and (5) to not cancel the lease agreement without a reason. The intentional conduct and civil conspiracy with co-Defendant Kang Frances aka Frances Kang left the Plaintiff without a residence. Plaintiff and his sons, ages 8 and 12, are currently homeless

and are therefore not afforded the educational opportunities of attending public school in the Fairfax County School District.

8.     As a result of becoming homeless due to racial discrimination and in a further attempt to assuage his young sons' anger and disappointment of not being able to move into a townhome and have their own rooms, Plaintiff Dyson was compelled as a victim of racial discrimination to sit down with his sons and give them "the talk,"  a discussion about the brutal effects of racial discrimination experienced solely from the African-American perspective that has occurred amongst millions of black parents and their underaged children for years in this country. Plaintiff Dyson, as a doting African American  father, told his sons that despite their accomplishments in life and despite their character, there will be those who will discriminate against them and they will be traumatized and disappointed throughout their lives in the United States of America because of the color of their skin.  Plaintiff Dyson also advised his children that often this discrimination will- as it did here- occur in affluent well-educated communities and settings where the White majority will not want them present. This Defendant's conduct proximately caused the Plaintiff's economic and non-economic damages.

9.     Defendant Kang Frances aka Frances Kang resides at 5022 W. Avenue N. Suite 102, Palmdale, California, 93551-5757, and is the landlord of the dwelling unit located at 7978 Vigne Court Vienna, Virginia 22182. This Defendant engaged in intentional, malicious racial discrimination in violation of the Fair Housing Act 42 U.S.C. §36139(a)(1)(A) by denying Plaintiff Dyson an opportunity to lease the unit at all times relevant. This Defendant, in hiring licensed real estate company and co-Defendant RPMP to lease the property in question, was required to comply with the Fair Housing Act in all aspects of the leasing process. This Defendant engaged in

prohibited activities and terms for rental based on race and stated that "no reason needed to be stated," after approving and then declining to lease to Dr. Dyson. This Defendant's conduct proximately caused the Plaintiff economic and non-economic damages.

10.     Defendant Kang Frances Living Trust is the co-owner of the dwelling unit at 7978 Vigne Court, Vienna, Virginia, 22182. This Defendant engaged in racial discrimination in violation of the Fair Housing Act, 42 U.S.C. §3613 (a)(1)(A), by denying Plaintiff Dyson an opportunity to lease the property at all times relevant. Co-Defendant Kang Frances aka Frances Kang used Defendant Kang Frances Living Trust to engage in and perpetuate racial discrimination against Plaintiff Dyson in violation of the Fair Housing Act by denying Plaintiff Dyson an opportunity to lease the unit at all times relevant. This Defendant's conduct proximately caused the Plaintiff economic and non-economic damages.

11.     Defendant Marc Blackwood was, at all times relevant, President of Northern Virginia Management Pros. Com d/b/a Real Estate Property Management Pros located at 14095 located at 14095 Dave's Store Lane, Gainesville, Virginia 20155. As the President and Chief Corporate officer, Defendant Blackwood was the principal broker responsible for directing and controlling the agents, servants, and employees of Defendant RPMP within the scope of their duties, who engaged in racial discrimination in violation of Fair Housing Act, 42 U.S.C. §3613 (a)(1)(A), by denying Plaintiff Mwata Dyson, M.D. an opportunity to lease the unit at all times relevant as stated in paragraph 5 above. This Defendant's conduct proximately caused the Plaintiff economic and non-economic damages.

12.     Plaintiff contacted the employees, agents and servants of Dutko|Ragen Homes & Investments, KW United d/b/a Keller Williams of 105 W. Broad Street, Suite 200, Falls Church,

VA 22046 which is licensed in the District of Columbia and Commonwealth of Virginia and engaged the real estate company as the agent for Dr. Dyson. The agents, servants, and employees of the realty company,  assisted Dr. Dyson with his search for housing and was aware of  the

activities engaged in by the co-defendants and co-conspirators, and this Defendant for profit conspired with the other co-defendants and did not serve his interest. Keller Williams had a responsibility to comply with all fair housing statutes, advise Dr. Dyson when the other defendants whom they directed him to did not comply with fair housing statutes, promote the interest of the leasee, establish strategies for accomplishing the leasee's objectives of leasing, assist in the drafting of negotiating of offers, disclose to the leasee material facts, and not give him false information related and disclose the brokerage relationships related  to 7978 Vigne Court, Vienna, Virginia, 22182, and did not serve and protect his interest. The leasee's agent should have advised Dr. Dyson that the requests and prohibited activities by the co-defendants were violations of the Fair Housing Act. Plaintiff complained to this Defendant that he felt he was the victim of racial discrimination with respect to being approved, then declined, and regarding  the information and requirements that were made of him with respect to his attempt to lease the unit. This Defendant's conduct proximately caused the Plaintiff's economic and non-economic damages.

13.     C. H. Realty, Inc., 12125 Heritage Park Circle, Sliver Springs, MD 20906, is a realty licensed to do business in Maryland and Virginia.   The agents, servants, and employees of this realty company were the agents for the landlord, and Keller Williams contacted this Defendant who represented the landlord who was leasing the property.  This Defendant was

aware and participated in the federal housing violation engaged in by the co-defendants and co-conspirators. This Defendant's conduct proximately caused the Plaintiff's economic and non-economic damages.

**Statement of Facts Common To All Counts**

14.    Plaintiff Dyson incorporates by reference paragraphs 1 through 13 as though fully stated herein.

15.    Prior to the start of the 2021-2022 academic school year, Plaintiff Dyson desired the benefit of the Fairfax County School District for his two sons, ages 8 and 12. To facilitate and broker the leasing process, Plaintiff Dyson retained the services of  Keller Williams Realty. Based on this brokerage relationship, an agent on behalf of  Keller Williams Realty provided Plaintiff Dyson with a listing for the property located at 7978 Vigne Court Vienna, Virginia 22182, owned by co-Defendants Kang Frances aka Frances Kang and Kang Frances Living Trust, and managed by Defendants RPMP and Marc Blackwood.

16.    At all times relevant, Defendant RPMP advertised themselves as "a neighborly company" on their website, claiming to serve all of Northern Virginia including the following counties: Loudoun, Fauquier, Culpeper, Stafford, Manassas Park, Manassas Prince William, Fairfax, Fairfax City, Arlington, Alexandria, and  Falls Church. At all times relevant to Plaintiff's claims, the demographic makeup of these counties according to the United States Census Bureau was predominantly Caucasian, and African Americans were in the minority of the population

setting the stage for the insidious racial discrimination perpetuated against Plaintiff Dyson and

his two minor sons:

- *Loudoun*: **White alone (67%)**, **Black or African American alone (8.1%)**, .5% American Indian and Alaska Native alone (.5%), Asian alone (20.3%), Native Hawaiian and Other Pacific islander alone (.1%), Two or more races (3.9%), Hispanic or Latino (13.9%), **White alone, not Hispanic or Latino (54.8%)**

- *Fauquier*: **White alone (87%)**, **Black or African American alone (7.8%)**, American Indian and Alaska Native alone (.5%), Asian alone (1.7%), Native Hawaiian and Other Pacific Islander alone (.1%), Two or More Races (2.8%), Hispanic or Latino (9.2%), **White alone not Hispanic or Latino (79%)**

- *Culpeper:* **White alone (79.4%), Black or African American alone (14.6%)**, American Indian and Alaska Native alone (.8%), Asian alone (1.7%), Native Hawaiian and Other Pacific Islander alone (.2%), Two or More Races (3.3%), Hispanic or Latino (11.6%), **White alone not Hispanic or Latino (69.8%)**

- *Stafford:* **White alone (70.9%), Black or African American alone (20.0%)**, American Indian and Alaska Native alone (.8%), Asian alone (3.6%), Native Hawaiian and Other Pacific Islander alone (.2%), Two or More Races (4.5%), Hispanic or Latino (14.2%), **White alone, not Hispanic or Latino (59.3%)**

- *Manassas Park:* **White alone (76.3%), Black or African American alone (13.4%)**, American Indian and Alaska Native alone (1.3%), Asian alone (5.9%), Native Hawaiian and Other Pacific Islander alone (.2%), Two or More Races (2.8%), Hispanic or Latino (18.5%), **White alone, not Hispanic or Latino (60.1%)**

- *Prince William:* **White alone (62.4%), Black or African American alone (22.2%)**, American Indian and Alaska Native alone (1.1%), Asian alone (9.4%), Native Hawaiian and Other Pacific Islander alone (.2%), Two or More Races (4.7%), Hispanic or Latino (24.5%), **White alone, not Hispanic or Latino (41.5%)**

- *Fairfax:* **White alone (64.7%), Black or African American alone (10.6%)**, American Indian and Alaska Native alone (.5%), Asian alone (20.1%), Native Hawaiian and Other Pacific Islander alone (.1%), Two or More Races (3.9%), Hispanic or Latino (16.5%), **White alone, not Hispanic or Latino (50%)**

- *Arlington:* **White alone (75%), Black or African American alone (9.7%)**, American Indian and Alaska Native alone (.6%), Asian alone (11%), Native Hawaiian and Other Pacific Islander alone (.1%), Two or More Races (3.6%), Hispanic or Latino (15.6%), **White alone, not Hispanic or Latino (61.4%)**

- *Alexandria:* ***White alone (76.3%), Black or African American alone (13.4%)***, American Indian and Alaska Native alone (1.3%), Asian alone (5.9%), Native Hawaiian and Other Pacific Islander alone (.2%), Two or More Races (2.8%), Hispanic or Latino (18.5%), ***White alone, not Hispanic or Latino (60.1%)***

- *Falls Church:* ***White alone (76.3%), Black or African American alone (13.4%)***, American Indian and Alaska Native alone (1.3%), Asian alone (5.9%), Native Hawaiian and Other Pacific Islander alone (.2%), Two or More Races (2.8%), Hispanic or Latino (18.5%), ***White alone, not Hispanic or Latino (60.1%)***

Specifically with respect to Vienna, Virginia, Vienna's population demographics are as follows: 75.43% White (75.43%),  Asian (14.65%), and Black or African Americans (2.68%). The U.S. Census reports that 68.6% of the residents have a bachelor's degree or higher. The medium income at all times relevant was $161, 196. The owner occupied rate is 83.3%. In 2019, 31% of arrests by the Vienna police were of Black people, which is not proportionate to the population of

2.68%. In the May 2012 edition of the  *Connection Newspaper*, Kenneth Saunders, Executive Director of the Office of Human Rights and Equality of Fairfax County where Vienna is located, reported, "Sadly, housing discrimination is alive and well and we've seen an uptick in complaints during the past six years."

17.    At the time of Plaintiff Dyson's interaction with Defendant RPMP, none of the members of Defendant RPMP's advertised management and professional "team" (Kevin Vecchio, Mary Wayland, Erin Wolf, Caroline Levans, Selina James-Deming, Marc Haakonson, Jen Roberson, Chuck Addox, or Marc Blackwood) were African American, and this was the case at all times relevant to Plaintiff's claims. Despite touting themselves as "the leader in North America Trusted by Over 70,000, Landlords", and claiming that they have leased and managed over 2,100 properties in Northern Virginia, this Defendant produced a video lasting two minute

and forty six seconds in length, and appearing on their website accessible via the "About Us" link wherein at least sixteen frames occur including interviews of clients, portrayal of leasing transactions, and home maintenance activities- and not one person of color appearing in the video.

18.     At all times relevant, even yet another video accessible via Defendant RPMP's website and entitled, "More from Marc Blackwood" and lasting three minutes and forty-one seconds contains at least nine frames of simulated leasing transactions - and not one person of color appearing in the video. More disturbing, however, is another video depicting a cartoon-drawn Caucasian family joyously experiencing various aspects of the leasing process, but appearing cowardly and terrified when interacting with a figure drawn in the shape of a human, but with the head and facial features of an extraterrestrial figure commonly associated with fictional and/or cartoonish representations of unidentified flying objects (i.e. UFOs)- a figure meant by Defendant RPMP to satirically represent unwanted guests in the cartoon-drawn Caucasian family's home and buying process based on the commentary audio heard in the video. At all times relevant, none of the commentary in the aforementioned videos, nor the copy appearing on Defendant RPMP's website, referenced a prospective tenant being subject to termination of the lease without explanation in the manner experienced by the Plaintiff, nor was there any reference to any requirement that a prospective tenant provide a self-evaluative letter of fitness to live in the community in the manner experienced by the Plaintiff.

19.     On July 19, 2021, based on the advice of Keller Williams Realty's agent given Plaintiff's interest in the property, Plaintiff Dyson paid sixty-five dollars ($65.00) for the lease application. The purchase of the application occurred at 8:39 a.m., with a confirmation number

5304-0220. Plaintiff Dyson received an email confirmation of receipt from Defendant RPMP which stated in part, "Thanks for applying to 7978 Vigne Court, Vienna, Virginia, 22182." On this same date, Plaintiff also received an email confirmation from Defendant RPMP's agent, servant, and employee, Rosa Mojica, indicating that the Defendant RPMP's internal review of the application had begun. On July 20, 2021, all supporting documents in conjunction with the application were sent by the Plaintiff to Defendant RPMP via e-mail, with Ms. Mojica replying via e-mail (with a "CC" to Leasing Manager Jen Robeson (Caucasian/White)) as follows:

> "Hello Mwata,
>
> The application you submitted for 7978 Vigne Court, Vienna, VA, 22182 is now complete with all the documentation we need to begin processing it.
>
> It can take a day or two for full screening results to come back and for the offer to be presented to the landlord. We know you all are anxious for a final decision, so we aim to complete this process as quickly as possible."

20.     On July 27, 2021, after waiting a week, Plaintiff Dyson still had not heard any response from the Defendants regarding the application status; therefore, he sent an e-mail requesting an update. In response, Plaintiff Dyson was advised on that same date that a decision would be made that day. On July 31, 2021, four days later, Plaintiff Dyson received an email that the landlord, Defendant Kang Frances aka Frances Kang, approved his application, and the e-mail read as follows:

> "Hello Mwata,
>
> I apologize for the delay, but landlord [sic] has finally come to a decision and approved your application. Are you still interested in moving forward with it?"
>
> Regards,
> Dyana Woods"

14

Plaintiff Dyson responded on July 31, 2021, via e-mail confirming that he accepted the offer to

move into the premises, and he also requested an early move-in date by responding as follows:

> "Hi Jen,
>
> Thanks for the share. We would like to proceed with renting this property.
> However, the delay has caused a number of issues as we prepared for a move next
> week. Primarily we've had to reschedule movers to come 8/4 to match another
> approved property once we didn't hear back about this unit.
>
> Can you give me an update on the following:
> 1) next available time to view
> 2) possibility of earlier move in date. - 8/5"

Plaintiff received further communication in separate emails from Defendant RPMP on July 31,

2021 which stated as follows:

> "Hello Mwata,
>
> Thanks for letting me know! I've sent you the approval email with the information
> on next steps and in order to move forward I'd need you to confirm terms (names
> & dates are correct). I have set the dates the soonest possible. Unfortunately it is
> not doable to start the lease on an earlier date.
>
> Jen is gathering the information for you and will get back to you as soon as
> possible.
>
> Best,
> Dyana Woods
> Leasing Assistant"
>                \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> "Hello Mwata!
>
> We look forward to having you as a resident!
>
> Because some applicants back out after being approved, we have to keep the
> home on the market, continue showings and accepting applications up until the
> point you have signed the lease.
>
> Here are the next steps we need to complete to finalize your lease...
>
> #1 - Please confirm that the name and dates listed below are correct:

Tenants (financially responsible): Mwata O. Dyson
Lease Starts: 08/11/2021 at 12:00 PM noon
Lease Ends: 08/10/2022 at 05:00 PM
You will not have access to the property before the lease begins, so plan your
movers accordingly and confirm you schedule with the building management (if
applicable) because some associations only allow move ins on certain days.

The time-of-day is not changeable, but if the dates are not correct we can adjust
them now, before we write the lease. Once we write the lease, you cannot change
the dates.

#2 - Once we receive your confirmation, we will send out the lease which you
will sign electronically through your tenant portal.
Please disregard any balance or charges you may see in your tenant portal.
Your first installment will be paid through the simple and secure Obligo system.
You will have 24 hours to sign the lease.
#3 - You will also receive two additional emails:
Invitation from SimpleBills to setup your utility account. This is one of the many
great benefits included in your Resident Benefits Package. No utility deposits or
connection fees! No need to contact multiple providers. One consolidated bill for
all utilities.
Invitation to Obligo - If you qualify, you may choose the $0 security deposit
option, or pay a tradition cash security deposit if you prefer. Either way, you will
checkout through the Obligo system. This is much faster and more convenient
than going to your bank, getting a cashier's check, and delivering it to our office
during business hours.

BILLING SUMMARY (due upon signing)
1st Full Month's Rent: $3,650.00
Resident Benefits Package: $39.00
Monthly Pet Admin Fee: $0.00
1st Full Month Total: $3,689.00

Security Deposit (or Obligo Billing Authorization): $3,650.00
One-time Pet Leasing Fee: $0.00
One-Time Total: $3,650.00

#4 - After all of the above has been completed, we will send a final email that
explains how the move-in process works.

Once again, we are excited to have you as a new resident and eager to take the
home off the market, so let's work together to get all these steps completed
ASAP!

Thank you!

> Regards,
> Dyana Woods"

21.     On August 1, 2021, Plaintiff received an e-mail from Defendant RPMP seeking to

confirm his personal information, and the start and end date of the lease. The e-mail read as

follows:

> Hello,
>
> Confirming that the information provided is correct:
>
> Tenants (financially responsible): Mwata O. Dyson
> Lease Starts: 08/11/2021 at 12:00 PM noon
> Lease Ends: 08/10/2022 at 05:00 PM

In reliance on the e-mail received, Plaintiff Dyson affirmatively concluded his plans for moving

into the subject property and incurred costs for doing so, including but not limited to, contacting

a moving company, and arranging a scheduled pick-up from his then-current address, and

providing specific instructions to the necessary third parties to hold personal items in storage

until August 11, 2021. On August 2, Plaintiff received e-mail instructions from Defendant RPMP

regarding how to electronically sign and complete a lease which was sent to him, as well as other

move-in instructions. The e-mail received by Plaintiff Dyson stated as follows:

> "Hello Mwata,
>
> We have written the lease for 7978 Vigne Court per the terms you confirmed.
>
> Here are the next steps...
> You should have received a separate email from Appfolio. Please follow the
> instructions in that email to sign the lease through your tenant portal no later than:
> 08/03/2021 at 01:00 PM
>
> If you have any questions about the lease, just reply to this message.
> Complete the checkout process through Obligo at:
> https://tenant.myobligo.com/invitation/eaF1-qoz2QC9unDaSQn

Our property offers deposit-free technology by Obligo. If you qualify for Obligo's Billing Authorization service you will not be required to pay a security deposit. Using a billing authorization is completely optional. If you prefer to pay a traditional deposit, you may.

If you have any questions, please see https://myobligo.com/faq/ use the blue chat feature in the lower right corner of the Obligo website, or email support@myobligo.com
Activate your SimpleBills account. You should have received a separate email invitation from SimpleBills. Be sure to enter your billing information as that must be completed before we provide access to the property.

SimpleBills makes paying utilities (gas, water, electric) each month easy by consolidating everything into one bill and giving you convenient ways to pay. This means you won't have to contact utility providers to set up service or pay any deposits! Your account with SimpleBills will provide you with everything you need; an overview of your utility usage, billing history, PDF copies of your bills, access help articles on reducing your utility costs, and more.

If you have any questions, please contact SimpleBills at info@simplebills.com or (254) 230-0199.

Please note that trash, cable & internet are not part of the SimpleBills platform and will have to be set up separately if not included as part of your lease.

Once these items have been completed, we will send further instructions on how the move-in process works.

Rosa Mojica

22.    On August 3, Plaintiff accessed an electronic copy of the lease via Defendant RPMP's portal, and subsequently completed and signed the lease where necessary. Dr. Dyson was then legally required to honor the terms of the lease. The copy of the lease which was accessed via Defendant RPMP's portal included the following provision:

"Fair Housing: Landlord and Manager shall not discriminate against Tenant in the provision of services or in any other manner on the basis of any protected class under Federal, state or local law or the Realtors Code of Ethics."

The lease also included the following addenda entitled "Residential Sight Unseen Acknowledgment" despite Plaintiff Dyson's prior expectation that he would be able to tour the property prior to moving into the premises. The addenda stated as follows

> "6.1 Resident Acknowledgment
> This is an acknowledgment by Mwata O. Dyson ("Tenant"), to rent the property located at 7978 Vigne Court, Vienna, Virginia 22182 ("Property"). We, the undersigned, acknowledge that we are signing the lease on the above referenced property without having seen the Property in person before signing the lease. Landlord, listing broker/property manager, and tenant broker make no representations as to suitability of the Property for our needs.
>
> We acknowledge that any images provided by the landlord, listing broker/property manager, and tenant broker electronically or in print may not display the property's features, flaws, or size. Landlord, listing broker/property manager, and tenant broker are not obligated to provide a comprehensive photo/video survey of the Property. Any photos provided are at the broker's discretion and may not be an accurate depiction of the current appearance and/or condition of the Property.
>
> We agree to lease the Property "as-is" and agree to accept it in its present condition, except as provided in the lease."

23.     From August 3 until August 8, Plaintiff Dyson continued to prepare to move by purchasing renter's insurance, moving all of his furniture out of his then-current home, and sleeping on the floor with his sons for four days until his then-current lease ended, submitted his change of address form to the United States Postal Service, transferred his utility service contract, and established a "SimpleBills" pay account pursuant to the instructions from the Defendants. During this time, Plaintiff Dyson did not receive any communication from the Defendants. However, on August 8, Plaintiff Dyson had difficulty logging into the Defendant's online portal and was unable to speak with anyone from Defendant RPMP despite repeated attempts.

24.     On August 9, Plaintiff Dyson sent numerous e-mails and text messages to Dyana Woods regarding the accessibility problems with the online portal and the status of the lease, however Plaintiff received no response. Nevertheless, to facilitate the moving process, Plaintiff Dyson affirmatively communicated via e-email his decision to link his checking account for the purpose of making online rental payments and relayed his intention to pay the first month's rent and deposit in cash.

25.     On August 10, Plaintiff received a text message from Dyana Woods only indicating that Plaintiff's banking information was received, but failing to address Plaintiff's other stated concerns communicated in his prior e-mail regarding the online portal accessibility and status of the lease. After numerous phone calls placed by Plaintiff Dyson and his agent went unanswered on this date, Plaintiff Dyson received a phone call from Dyana Woods indicating that he would be hearing back from the leasing manager by the end of the day. However, no such contact was made with Plaintiff Dyson by the leasing manager.

26.     On the evening of August 10, Plaintiff Dyson received the following e-mail:

> "Hello Mwata Dyson,
>
> This is a courtesy notification that your online portal account (mwatadyson@gmail.com) has been deactivated.
>
> Any scheduled or automatic payments that were set up have been canceled.
>
> If you believe this deactivation was made in error, please contact us as soon as possible.
>
> Thank you for choosing Real Property Management Pros.
>
> Real Property Management Pros
>
> (703) 424-7767

managementpros.com"

Dyana Woods later spoke with Plaintiff Dyson indicating that a refund had been processed by

Jen. Plaintiff Dyson, having been blindsided by the denial of housing, demanded a response from

the Defendants as to the basis or reason for their decision to which the Defendants replied, "no

reason need be given."He was then asked by Defendant RPMP for a copy of his resume as

though he were applying for a job. In addition, he was requested by Defendant RPMP to write a

letter to explain why he was worthy of living on the premises.

27.     On August 13, 2021, Plaintiff Dyson filed a complaint with the U.S. Department

of Housing and Urban Development (HUD), Office of Fair Housing and Equal Opportunity

(FHEO) alleging housing discrimination on the basis of race. Plaintiff Dyson stated in his

complaint "I believe I was discriminated against because I am African-American and a single

parent raising 2 sons."

28.     Prior to this incident, Plaintiff Dyson and his family were previously exposed to

the raw underbelly of racism in 2019 when Dr. Dyson's six-year-old son was called a "nigger"

and was physically threatened by a White classmate at Horace Man Elementary School in

Washington, D.C on April 30, 2019. Thus, the incident which is the subject of this lawsuit has

further retraumatized Plaintiff Dyson and his children.

### COUNT I
### Racial Discrimination In The Sale Or Rental Of Housing (42 U.S.C. §3604) and Request For Punitive Damages

29.     Plaintiff incorporates by reference paragraphs 1 through 28 as though fully stated

herein.

30.     Pursuant to 42 U.S.C. §3604, it shall be unlawful, (a) to refuse to sell or rent after

the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise

make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial

status, or national origin, (b) to discriminate against any person in the terms, conditions, or

privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection

therewith, because of race, color, religion, sex, familial status, or national origin, (c) to represent

to any person because of race, color, religion, sex, handicap, familial status, or national origin

that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact

available.

　　　　31.　　Here, Defendants RPMP, and their agents, servants, and employees, Defendant

Frances Kang, Defendant Kang Frances Living Trust, Defendant Dutko|Ragen Homes &

Investments, KW United d/b/a Keller Williams, Defendant Northern Virginia Management

Pros. Com  d/b/a Real Property Management Pros, Defendant Marc Blackwood, and Defendant

C. H. Realty, Inc. refused to lease Plaintiff Dyson the property for which  he had applied for and

was accepted after making a bona fide offer for the property. Defendants' actions constituted

racial discrimination given that these Defendants named in this Complaint, individually and

collectively engaged in prohibited activities and pretexts for racial discrimination against Dr.

Dyson, an African-American and member of a protected class, by applying different rental terms

for Dr. Dyson's tenancy such as (1) not showing the property to Plaintiff Dyson before he signed

the lease, (2) requiring him to submit a resume as a part of the leasing process, (3) requiring

Plaintiff Dyson to interview with the owner in which she questioned (irrelevantly) when he had

last practiced medicine, (4) requiring Plaintiff Dyson to write a letter stating, "why he was

worthy to rent the property" for the owner after the lease was approved and then declined, (5)

approving and requiring Plaintiff Dyson to execute the lease and pay a fee for the unit without leasing to him, (6) blocking Plaintiff's online account set up by this Defendant to pay rent before he could move in without any explanation, thereby denying the Plaintiff the ability to pay the first month's rent despite Plaintiff offering to pay the first month's rent in cash, (7) requiring Plaintiff Dyson to change the utilities to his name and take out a policy of renters insurance, (8) failing to timely return Plaintiff's calls and emails (i.e. "ghosting him") within days prior to the move-in date, (9)  and unilaterally, abruptly, and in a discriminatory fashion cancelling Plaintiff's approval of the opportunity to lease only twelve hours prior to the move-in date without providing any explanation to the Plaintiff, and only offering him the comment by the owner that "no explanation was necessary."

32.     As a proximate cause and direct result of the Fair Housing Act violations by these Defendants and their intentional conduct, Plaintiff Dr. Dyson and his two minor children experienced non-economic and economic damages, including but not limited to great mental distress, depression, loss of sleep, a feeling of hopelessness, and embarrassment, past, present, and future economic damages including the cost of alternative housing, loss of income, moving and storage expenses, and other related expenses which are ongoing. The Defendants' conduct was carried out with malice aforethought, and reckless disregard to the safety and well-being of Plaintiff Dyson and his minor children, thereby entitling Plaintiff to punitive damages.

### **Prayer for Relief**

WHEREFORE, the Plaintiff respectfully request that the court award him:

(a) the sum of ten million dollars ($10,000,000.00) in compensatory damages suffered because of the racial discrimination by these Defendants jointly and severally,

(b) punitive damages of twenty million dollars ($20,000,000.00) against these Defendants

jointly and severally;

(c) cost of reasonable attorney fees incurred with this lawsuit with interest thereon; and

(d) other damages and further relief as deemed just.

**<u>Jury Demand</u>**

The Plaintiff requests trial by jury.

Respectfully submitted,

_____/s/ Donald R. Huskey_____
Donald R. Huskey
Federal Bar Number MD22981
Law Offices of Donald R. Huskey L.L.C.
9419  Lyonswood Drive
Owings Mills, Maryland 21117
443 929-1001
dr.huskey@gmail.com

_____/s/ Governor E. Jackson, III_____
Governor E. Jackson, III
Federal Bar Number MD0002
Law Offices of Governor E. Jackson, L.L.C.
400 E. Joppa Road
Suite 50
Towson, Maryland 21286
410-528-4150
gjackson@governorjacksonlaw.com