United States District Court For The District of Columbia

| | |
|---|---|
| Mwata Dyson <br> 453 N. St. NW <br> Washington, D.C. 20024, <br><br> *Plaintiff*, <br> (APM) <br> v. <br><br> Dutko\|Ragen Homes & Investments, <br> KW United d/b/a Keller Williams, et al. <br><br> *Defendants* | * <br><br> * <br><br> Civil Action No.: 1:21-CV-02280 <br><br> * <br><br> * |

******************************************************************************

## PLAINTIFF MWATA DYSON'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS NORTHERN VIRGINIA MANAGEMENT PROS. COM D/B/A REAL PROPERTY MANAGEMENT PROS AND MARC BLACKWOOD'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiff Mwata Dyson, by and through his undersigned counsel, hereby submits this Memorandum of Points and Authorities In Support of Plaintiff's Opposition to Defendants Northern Virginia Management Pros. Com d/b/a Real Property Management Pros and Marc Blackwood's Motion to Dismiss for Lack of Personal Jurisdiction, and in furtherance of their Memorandum states as follows:

### *Legal Standard*

Plaintiff Dyson bears the burden of establishing personal jurisdiction over each defendant. *See* <u>GTE New Media Services, Inc. v. Ameritech Corp.</u>, 21 F.Supp.2d at 36. In order to meet its burden, plaintiffs must allege specific facts on which personal jurisdiction can be based; it cannot rely on conclusory allegations. Nor can plaintiffs aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any single defendant. Furthermore, when considering personal jurisdiction, the Court need not treat all of

1

the Plaintiff's allegations as true. Instead, the court "may [also] receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." Jung v. Assoc. of Amer. Medical Colleges, 300 F.Supp.2d 119, 127 (D.D.C.2004) (quoting United States v. Philip Morris Inc., 116 F.Supp.2d 116, 120 n. 4 (D.D.C.2000)); *see also* Brunson v. Kalil & Co., 404 F.Supp.2d 221, 223 (D.D.C.2005).

*Legal Argument*

Contrary to Defendants' arguments, Plaintiff Dyson has pled facts that establish the requisite legal basis for this honorable Court to exercise personal jurisdiction over them given that they purposefully directed their efforts toward Plaintiff Dyson as a member of the present forum, the District of Columbia. *See* Complaint at para. 3, 4. The Defendants directed their efforts at the Plaintiff via their website upon which the Plaintiff relied at all times relevant, as the Complaint states:

> "    17.    At the time of Plaintiff Dyson's interaction with Defendant RPMP, none of the members of Defendant RPMP's advertised management and professional "team" (Kevin Vecchio, Mary Wayland, Erin Wolf, Caroline Levans, Selina James-Deming, marc Haakonson, Jen Roberson, Chuck Addox, or Marc Blackwood) were African-American, and this was the case at all times relevant to Plaintiff's claims. Despite touting themselves as "the leader in North America Trusted by Over 70,000 Landlords", and claiming that they have leased and managed over 2,100 properties in Northern Virginia, this Defendant produced a video lasting two minute and forty six seconds in length, and appearing on their website accessible via the "About Us" link wherein at least sixteen frames occur including interviews of clients, portrayal of leasing transactions, and home maintenance activities- and not one person of color appearing in the video."
>     18.    At all times relevant, even yet another video accessible via Defendant RPMP's website and entitled, "More from Marc Blackwood" and lasting three minutes and forty-one seconds contains at least nine frames of simulated leasing transactions - and not one person of color appearing in the video. More disturbing, however, is another video depicting a cartoon-drawn Caucasian family joyously experiencing various aspects of the leasing process, but appearing cowardly and terrified when interacting with a figure drawn in the

shape of a human, but with the head and facial features of an extraterrestrial figure commonly associated with fictional and/or cartoonish representations of unidentified flying objects (i.e. UFOs)- a figure meant by Defendant RPMP to satirically represent unwanted guests in the cartoon-drawn Caucasian family's home and buying process based on the commentary audio heard in the video. At all times relevant, none of the commentary in the aforementioned videos, nor the copy appearing on Defendant RPMP's website, referenced a prospective tenant being subject to termination of the lease without explanation in the manner experienced by the Plaintiff, nor was there any reference to any requirement that a prospective tenant provide a self-evaluative letter of fitness to live in the community in the manner experienced by the Plaintiff.

19. On July 19, 2021, based on the advice of Keller Williams Realty's agent given Plaintiff's interest in the property, Plaintiff Dyson paid sixty-five dollars ($65.00) for the lease application. The purchase of the application occurred at 8:39 a.m., with a confirmation number 13 5304-0220. Plaintiff Dyson received an email confirmation of receipt from Defendant RPMP which stated in part, "Thanks for applying to 7978 Vigne Court, Vienna, Virginia, 22182." On this same date, Plaintiff also received an email confirmation from Defendant RPMP's agent, servant, and employee, Rosa Mojica, indicating that the Defendant RPMP's internal review of the application had begun. On July 20, 2021, all supporting documents in conjunction with the application were sent by the Plaintiff to Defendant RPMP via e-mail, with Ms. Mojica replying via e-mail (with a "CC" to Leasing Manager Jen Robeson (Caucasian/White)) as follows:

> "Hello Mwata,
>
> The application you submitted for 7978 Vigne Court, Vienna, VA, 22182 is now complete with all the documentation we need to begin processing it. It can take a day or two for full screening results to come back and for the offer to be presented to the landlord. We know you all are anxious for a final decision, so we aim to complete this process as quickly as possible."

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

21. On August 1, 2021, Plaintiff received an e-mail from Defendant RPMP seeking to confirm his personal information, and the start and end date of the lease. The e-mail read as follows:

> Hello,
>
> Confirming that the information provided is correct:

> Tenants (financially responsible): Mwata O. Dyson
> Lease Starts: 08/11/2021 at 12:00 PM noon
> Lease Ends: 08/10/2022 at 05:00 PM

In reliance on the e-mail received, Plaintiff Dyson affirmatively concluded his plans for moving into the subject property and incurred costs for doing so, including but not limited to, contacting a moving company, and arranging a scheduled pick-up from his then-current address, and providing specific instructions to the necessary third parties to hold personal items in storage until August 11, 2021. On August 2, Plaintiff received e-mail instructions from Defendant RPMP regarding how to electronically sign and complete a lease which was sent to him, as well as other move-in instructions. The e-mail received by Plaintiff Dyson stated as follows:

> "Hello Mwata,
>
> We have written the lease for 7978 Vigne Court per the terms you confirmed.
> Here are the next steps...
> You should have received a separate email from Appfolio. Please follow the instructions in that email to sign the lease through your tenant portal no later than: 08/03/2021 at 01:00 PM
>
> If you have any questions about the lease, just reply to this message. Complete the checkout process through Obligo at:
> https://tenant.myobligo.com/invitation/eaF1-qoz2QC9unDaSQn
>
> Our property offers deposit-free technology by Obligo. If you qualify for Obligo's Billing Authorization service you will not be required to pay a security deposit. Using a billing authorization is completely optional. If you prefer to pay a traditional deposit, you may.
>
> If you have any questions, please see https://myobligo.com/faq/ use the blue chat feature in the lower right corner of the Obligo website, or email support@myobligo.com Activate your SimpleBills account. You should have received a separate email invitation from SimpleBills. Be sure to enter your billing information as that must be completed before we provide access to the property.

SimpleBills makes paying utilities (gas, water, electric) each month easy by consolidating everything into one bill and giving you convenient ways to pay. This means you won't have to contact utility providers to set up service or pay any deposits! Your account with SimpleBills will provide you with everything you need; an overview of your utility usage, billing history, PDF copies of your bills, access help articles on reducing your utility costs, and more.

If you have any questions, please contact SimpleBills at info@simplebills.com or (254) 230-0199.

Please note that trash, cable & internet are not part of the SimpleBills platform and will have to be set up separately if not included as part of your lease.

Once these items have been completed, we will send further instructions on how the move-in process works.

Rosa Mojica

22. On August 3, Plaintiff accessed an electronic copy of the lease via Defendant RPMP's portal, and subsequently completed and signed the lease where necessary. Dr. Dyson was then legally required to honor the terms of the lease. The copy of the lease which was accessed via Defendant RPMP's portal included the following provision:

"Fair Housing: Landlord and Manager shall not discriminate against Tenant
in the provision of services or in any other manner on the basis of any protected class under Federal, state or local law or the Realtors Code of Ethics."

The lease also included the following addenda entitled "Residential Sight Unseen Acknowledgment" despite Plaintiff Dyson's prior expectation that he would be able to tour the property prior to moving into the premises. The addenda stated as follows

"6.1 Resident Acknowledgment
This is an acknowledgment by Mwata O. Dyson ("Tenant"), to rent the property located at 7978 Vigne Court, Vienna, Virginia 22182

("Property"). We, the undersigned, acknowledge that we are signing the lease on the above referenced property without having seen the Property in person before signing the lease. Landlord, listing broker/property manager, and tenant broker make no representations as to suitability of the Property for our needs.

We acknowledge that any images provided by the landlord, listing broker/property manager, and tenant broker electronically or in print may not display the property's features, flaws, or size. Landlord, listing broker/property manager, and tenant broker are not obligated to provide a comprehensive photo/video survey of the Property. Any photos provided are at the broker's discretion and may not be an accurate depiction of the current appearance and/or condition of the Property.

We agree to lease the Property "as-is" and agree to accept it in its present condition, except as provided in the lease."
*****************************************************

26. On the evening of August 10, Plaintiff Dyson received the following e-mail:

"Hello Mwata Dyson, This is a courtesy notification that your online portal account (mwatadyson@gmail.com) has been deactivated.

Any scheduled or automatic payments that were set up have been canceled.

If you believe this deactivation was made in error, please contact us as soon as possible.

Thank you for choosing Real Property Management Pros.

Real Property Management Pros

(703) 424-7767

managementpros.com"

Dyana Woods later spoke with Plaintiff Dyson indicating that a refund had been processed by Jen. Plaintiff Dyson, having been blindsided by the denial of housing, demanded a response from the Defendants as to the

> basis or reason for their decision to which the Defendants replied, "no reason need be given."He was then asked by Defendant RPMP for a copy of his resume as though he were applying for a job. In addition, he was requested by Defendant RPMP to write a letter to explain why he was worthy of living on the premises."
> *See* Complaint at para. 17-19; 21-22, 26

Defendants' communication from Virginia with the Plaintiff up to and through the time of the Plaintiff's alleged injury while Plaintiff Dyson was a resident of the District of Columbia is significant for purposes of applying this forum's long-arm statute in accordance with due process. *See* <u>Erwin-Simpson v. AirAsia Berhad</u>, 985 F.3d 883 (D.C. Cir. 2021). As this honorable Court is aware, the District of Columbia's long-arm statute provides that a District of Columbia court may exercise personal jurisdiction over a person as to a claim arising from the person's (1) transacting any business in the District of Columbia, (2) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; or (3) causing tortious injury in the District of Columbia by an act or omission outside of the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. *See* D.C. Code §13-423(a). To satisfy due process, a plaintiff must show that a commercial defendant purposefully directed its efforts towards forum residents or created continuing obligations for those same residents. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985). Here, Plaintiff Dyson has satisfied the requirements for an adequate jurisdictional basis for his claims.

Defendants' false proffer that they "do not manage or lease any D.C. properties whatsoever", and the assertions made in the Declaration of Marc Blackwood that Defendant RPMP has no substantial contacts with the District of Columbia is not enough to escape personal

jurisdiction in this matter. In <u>FC Inv. Group LC v. IFX Mkts. Ltd</u>, F.3d 1087, 1094-95 (D.C. Cir. 2008), the Court held as follows:

> Under certain circumstances, a foreign corporation's maintenance of a website that is accessible in the District can satisfy general jurisdiction requirements. *See, e.g., id.* at 513. But "[t]he mere accessibility of [a] defendant['s] website[ ] ... does not establish the necessary minimum contacts" required for general jurisdiction. *Id.* at 512 (quotations and alterations omitted). Two additional criteria must be met. First, the website must be "interactive." *See id.* at 511. An "`essentially passive' website through which customers merely access information" is insufficient. *Id.* at 512 (quoting *GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1348 (D.C.Cir.2000)). Moreover, District residents must use the website in a "`continuous and systematic'" way.

Here, Defendants' website meets the first criteria as it is interactive. Specifically, when Defendant's website is accessed, a prompt appears which states "Hi, you may just be browsing, but our team of operators is standing by. Click here to start chatting whenever you are ready." *See Exhibit 1* [Defendants' "Our Leasing Service" webpage at highlights]. Additionally, the second criteria is met given that the Defendants explicitly state on their website that Washington, D.C. is an "Area Served" by their operations, lending credence to Plaintiff's claim that District residents such as the Plaintiff use, and are expected by the Defendants to use the website in a continuous and systematic way, thereby conferring jurisdiction over the Defendants for purposes of this case. *See Exhibit 2* [Defendants' "Areas Served" webpage at highlights]. These Defendants' regular and systematic contacts with Plaintiff Dyson during the course of the transaction as stated above to solicit his business also establishes specific jurisdiction over these Defendants which comports with this forum's long-arm statute and does not violate due process. <u>United States v. Ferrara</u>, 54 F.3d825, 828 (D.C. Cir. 2000).

Also, specific jurisdiction exists because these Defendants were co-conspirators with other co-Defendants as pled in the Complaint. The Complaint states:

"   7.    *Defendant RPMP advertises an approval process applicable to non-minority leasing applicants requiring the following steps in accordance with industry standards: (1) to not require a personal interview or have contact with the owner, (2) to show the property before the lease is signed, (3) to obtain approval of the lease based on financial status, (4) to advise of the pet policy for non-service animals, and (5) to not cancel the lease agreement without a reason. The intentional conduct and civil conspiracy with co-Defendant Kang Frances aka Frances Kang left the Plaintiff without a residence.* Plaintiff and his sons, ages 8 and 12, are currently homeless 6 and are therefore not afforded the educational opportunities of attending public school in the Fairfax County School District."

*********************************************

"   12.    Plaintiff contacted the employees, agents and servants of Dutko|Ragen Homes & Investments, KW United d/b/a Keller Williams of 105 W. Broad Street, Suite 200, Falls Church, 8 VA 22046 which is licensed in the District of Columbia and Commonwealth of Virginia and engaged the real estate company as the agent for Dr. Dyson. *The agents, servants, and employees of the realty company, assisted Dr. Dyson with his search for housing and was aware of the activities engaged in by the co-defendants and co-conspirators, and this Defendant for profit conspired with the other co-defendants and did not serve his interest.* Keller Williams had a responsibility to comply with all fair housing statutes, advise Dr. Dyson when the other defendants whom they directed him to did not comply with fair housing statutes, promote the interest of the leasee, establish strategies for accomplishing the leasee's objectives of leasing, assist in the drafting of negotiating of offers, disclose to the leasee material facts, and not give him false information related and disclose the brokerage relationships related to 7978 Vigne Court, Vienna, Virginia, 22182, and did not serve and protect his interest. The leasee's agent should have advised Dr. Dyson that the requests and prohibited activities by the co-defendants were violations of the Fair Housing Act. Plaintiff complained to this Defendant that he felt he was the victim of racial discrimination with respect to being approved, then declined, and regarding the information and requirements that were made of him with respect to his attempt to lease the unit. This Defendant's conduct proximately caused the Plaintiff's economic and non-economic damages." *See* Complaint at paras. 7, 12 (emphasis added).

Section 13-423(a)(1) authorizes the court to exercise personal jurisdiction over a defendant who, whether "directly or by an agent" (in this case, a co-conspirator), "transact[s] any

business in the District of Columbia." D.C.Code § 13-423(a)(1); *see also Second Amend. Found.*, 274 F.3d at 523 ("Persons who enter the forum and engage in conspiratorial acts are deemed to `transact business' there `directly'; co-conspirators who never enter the forum are deemed to `transact business' there `by an agent.'" (quoting D.C.Code § 13-423(a)(1))). For "conspiracy" jurisdiction under subsection (a)(3), the plaintiff must allege "(1) the existence of a civil conspiracy..., (2) the defendant's participation in the conspiracy, and (3) an overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy." Kopff v. Battaglia, 425 F.Supp.2d 76, 81 n. 4 (D.D.C.2006) (quotation omitted); *see also* Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C.Cir.1991). As stated on the face of Plaintiff's Complaint in the aforementioned paragraphs 7 and 12, Plaintiffs have satisfied the prima facie elements of establishing general and specific jurisdiction over these Defendants.

The scope of discovery "lies within the district court's discretion. Mwani v. bin Laden, 417 F.3d 1, 8 (D.C.Cir. 2005) "As a general matter, discovery under the Federal Rules of Civil Procedure should be freely permitted, and this is no less true when discovery is directed to personal jurisdiction." Edmond v. United States Postal Service General Counsel, 949 F.2d 415, 425 (D.C.Cir.1991). Based on the statements, representations, and intentional availment of these Defendants to the jurisdiction of this Court, Plaintiff Dyson respectfully requests that this Court deny Defendants' Motion, or in the alternative grant Plaintiff's request for jurisdictional discovery if this Court for any reason deems that jurisdiction has not been established.

WHEREFORE, Plaintiff Dyson respectfully requests that this Court deny Defendants' Motion, or in the alternative grant Plaintiff's request for jurisdictional discovery if this Court for any reason deems that jurisdiction has not been established.

Respectfully submitted,

____/s/ Donald R. Huskey____
Donald R. Huskey
Federal Bar Number MD 22981
Law Offices of Donald R. Huskey L.L.C.
 9419 Lyonswood Drive
Owings Mills, Maryland 21117
443 929-1001
 dr.huskey@gmail.com

/s/ Governor E. Jackson, III
 Governor E. Jackson, III
Federal Bar Number MD0002
Law Office of Governor Jackson, L.L.C.
400 E. Joppa Road Suite 50
Towson, Maryland 21286
410-528-4150
gjackson@governorjacksonlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2021, I electronically filed a copy of Plaintiff's Memorandum In Support of Plaintiff's Opposition to Defendants Northern Virginia Management Pros. Com d/b/a Real Property Management Pros and Marc Blackwood's Motion to Dismiss for

Lack of Personal Jurisdiction, thereby serving a copy on all counsel of record in the above-captioned case.

/s/ Governor E. Jackson, III