## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **MWATA DYSON,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **DUTKO RAGEN HOMES &** | ) |
| **INVESTMENTS, KW UNITED,** | ) |
| **d/b/a KELLER WILLIAMS, et al.** | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

Case No. 21-cv-02280 (APM)

_____

### MEMORANDUM OPINION AND ORDER

Plaintiff Mwata Dyson filed this action against multiple Defendants alleging violations of the Fair Housing Act ("FHA").  Defendants Northern Virginia Property Management Pros Co., doing business as Real Property Management Pros ("RPMP"), and Marc Blackwood move to dismiss the complaint for lack of personal jurisdiction. Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction, ECF No. 4 [hereinafter RPMP's Mot.].  Defendants Dutko | Ragen Homes & Investments, KW, doing business as Keller Williams ("Keller Williams"), and Tasheika S. Penn move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) and Rule 8 of the Federal Rules of Civil Procedure.  Defs.' Mot. to Dismiss First Am. Compl., ECF No. 15 [hereinafter Keller Williams Defs.' Mot.].  For the reasons stated below, Defendants' Motions are granted.  Plaintiff's request for jurisdictional discovery in response to RPMP's Motion is denied.

### I.

#### A.

RPMP, led by its president Marc Blackwood, is a property management company licensed and organized in Virginia, with its principal office in Gainesville, Virginia.  *See* RPMP's Mot.,

Defs.' Mem. of P. & A., ECF No. 4-1 [hereinafter RPMP's Mem.], at 2; Defs.' Mot., Decl. of Marc Blackwood, ECF No. 4-2, at 2; Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 6, 11.  RPMP manages a property located at 7978 Vigne Court in Vienna, Virginia (the "Vienna Property"). *See* RPMP's Mem. at 2.  Plaintiff retained the realty services of Keller Williams and its agent Tasheika Penn to find a rental unit to rent for himself and his two young children.  Penn brought the Vienna Property to Plaintiff's attention.  *See* Defs. Keller Williams & Tasheika Penn's Mem. in Supp. of Mot. to Dismiss, ECF No. 16, at 1–2.  RPMP received an application from Plaintiff on July 19, 2021, to lease the Vienna Property.  *See* Compl. ¶ 19.  In the weeks that followed, RPMP purportedly agreed to the lease terms with Plaintiff before reneging on the agreement prior to Plaintiff's move.  *See* Compl. ¶¶ 19–26; RPMP's Mem. at 2.  Plaintiff claims that Defendants' actions were motivated by racial animus in violation of the FHA.  Compl. ¶¶ 6–8.

## B.

Plaintiff filed his initial complaint against Defendants RPMP, Blackwood, Keller Williams, and others on August 27, 2021.  *See* Compl. at 1.  RPMP and Blackwood moved to dismiss the Complaint for lack of personal jurisdiction on October 5, 2021.  *See* RPMP's Mot. at 1.  Keller Williams then moved to dismiss for failure to state a claim on October 12, 2021.  Def. Keller Williams's Mot. to Dismiss Compl. Pursuant to Rule 12(B)(6), ECF No. 6.  Plaintiff then filed his First Amended Complaint ("FAC") on October 27, 2021, which, among other things, added Penn as a defendant.  First Am. Compl., ECF No. 13 [hereinafter FAC].  The court treated that pleading as an amendment as of right as to Keller Williams because Plaintiff filed the amendment within 21 days of Keller Williams's motion, thereby mooting the motion.  Minute Order, Oct. 27, 2021.  The court did not, however, deem RPMP and Blackwood's motion to be moot because Plaintiff, without seeking leave of court, filed the amended complaint more than 21

days after those defendants had filed their motion.  *Id.*  Keller Williams and Penn then moved jointly to dismiss the FAC pursuant to Rule 12(b)(6) and Rule 8.  Keller Williams Defs.' Mot. at 1.

Both motions are now ripe for consideration.  The court begins with RPMP and Blackwood's jurisdictional challenge before turning to Keller Williams and Penn's motion.

## II.

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  The plaintiff must demonstrate the defendant's connection with the forum by alleging specific facts.  *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  Factual discrepancies in the record "must be resolved in favor of the plaintiff."  *Crane*, 894 F.2d at 456. The court, however, need not "treat all of the plaintiff's allegations as true" and may consider affidavits and other materials to determine whether to exercise jurisdiction.  *Cap. Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 74 (D.D.C. 2003).

A plaintiff can establish personal jurisdiction over a defendant in one of two ways: they can either prove the court has "general (sometimes called all-purpose) jurisdiction [or] specific (sometimes called case-linked) jurisdiction."  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).  Plaintiff invokes both as to RPMP and Blackwood but succeeds as to neither.

### A.

General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit."  *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d

883, 889 (D.C. Cir. 2021).  A court may exercise such jurisdiction only when the defendant's "affiliations with the [forum] are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

Plaintiff relies on outdated D.C. Circuit precedent to make the case that RPMP's website satisfies the requirements of general jurisdiction.  Pl.'s Opp'n to RPMP's Mot., ECF No. 11, Pl.'s Mem. of P. & A. in Supp. of Pl.'s Opp'n to RPMP's Mot., ECF No. 11-1 [hereinafter Pl.'s RPMP Opp'n], at 7–8.  Plaintiff cites *FC Investment Group LC v. IFX Markets, LTD.*, 529 F.3d 1087 (D.C. Cir. 2008), for the proposition that the interactivity of a website combined with District residents' use of it in a "continuous and systematic" way is sufficient to confer general jurisdiction over an out-of-District company.  Pl.'s RPMP Opp'n at 8.  But the D.C. Circuit expressly overruled *FC Investment Group LC* last year in *Erwin-Simpson*.  *Erwin-Simpson*, 985 F.3d at 891 ("[T]he reasoning underlying our precedent has been eroded by intervening Supreme Court decisions. . . . Because *Gorman* and *FC Investment Group* set a lower bar, we overrule our precedent on that point as inconsistent with *Daimler* and *Goodyear*.").  *Erwin-Simpson* holds that, for a foreign defendant corporation's online contacts to establish general jurisdiction, they "would need to render the corporation 'essentially at home' in the District."  *Erwin-Simpson*, 985 F.3d at 892 (quoting *Goodyear*, 564 U.S. at 919).  Here, Plaintiff points only to RPMP's website's interactive pop-up prompt and a single statement on the website that Washington, D.C., is among the company's "Areas Served," Pl.'s RPMP Opp'n at 8, but those attributes fall well short of establishing RPMP to be "essentially at home" in the District.  The court thus lacks general jurisdiction over RPMP.

**B.**

That leaves specific jurisdiction.  Specific jurisdiction "depends on an affiliation between the forum and the underlying controversy."  *Goodyear*, 564 U.S. at 919 (cleaned up).  While the controversy must relate to the defendant's forum connections, the defendant's connections need only be "some act by which [the defendant] purposefully avails itself of the privilege of conducting activities within the forum State."  *Ford*, 141 S. Ct. at 1024–25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  For the court to satisfy itself that it has specific jurisdiction over a non-resident defendant, the court must undertake two inquiries:  first, whether the District of Columbia's long-arm statute authorizes the exercise of the court's power; and second, whether a finding of jurisdiction satisfies constitutional due process.  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

Plaintiff cites three different subsections of the D.C. long-arm statute, and he makes two cursory arguments to support personal jurisdiction under those subsections. Pl.'s RPMP Opp'n at 7 (citing D.C. Code § 13-423(a)(1), (3)–(4)).  First, Plaintiff asserts that "Defendants' regular and systematic contacts with Plaintiff Dyson during the course of the transaction as stated above to solicit his business . . . establish[] specific jurisdiction over these Defendants."  *Id.* at 8.  Second, he maintains that "specific jurisdiction exists because these Defendants were co-conspirators with other co-Defendants as pled in the Complaint."  *Id.*  Plaintiff hardly elaborates as to either ground, but in any event they fail.

*Section 13-423(a)*.  D.C. Code § 13-423(a)(1) permits exercise of personal jurisdiction over a "person, who acts directly or by an agent, as to a claim of relief arising from the person's transacting any business in the District of Columbia."  This provision is "given an expansive interpretation" that is "coextensive with the due process clause."  *Mouzavirs v. Baxter*, 434 A.2d

988, 992 (D.C. 1981).  When, as here, the business transacted is contractual in nature, the question is whether the contract has a "substantial connection" to the District of Columbia.  *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004).  "The mere fact that the other party to the contract is a District of Columbia resident does not create a 'substantial connection.'"  *Nat'l Resident Matching Program v. Elec. Residency LLC*, 720 F. Supp. 2d 92, 100 (D.D.C. 2010).  Instead, courts "must evaluate the prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  *Helmer*, 393 F.3d at 205 (internal quotation marks omitted).

The aborted lease agreement that Plaintiff signed for the Vienna Property lacks a "substantial connection" to the District of Columbia.  The "contemplated future consequences" of the lease were for Plaintiff and his family to occupy real property in Virginia and pay rent to a Virginia-based management company.  Additionally, Plaintiff identifies no "terms of the contract" that involve the District of Columbia.

And, importantly, the parties' "actual course of dealing" at every step had no connection to the District of Columbia other than Plaintiff's presence in the forum.

- RPMP did not, contrary to Plaintiff's characterization, directly "solicit his business."  Pl.'s RPMP Opp'n at 8.  Instead, Plaintiff initiated the contact with RPMP, after Keller Williams had given Plaintiff a listing for the Vienna Property. Compl. ¶ 15.

- Nor did the effort to lease the Vienna Property involve "prior negotiations."  In fact, Plaintiff alleges no negotiations over the lease terms:  Plaintiff applied to lease the property and submitted his supporting documents via email, *id* ¶ 19, and

approximately two weeks later, he received an email from RPMP indicating that the landlord had approved his application, *id.* ¶ 20.

- The post-approval communications with RPMP likewise involved no "negotiations." They concerned the terms of the lease, instructions for electronically signing the lease, and timing for moving in. *Id.* ¶¶ 20–21. Plaintiff then signed the lease through RPMP's online portal. *Id.* ¶ 22.

- And RPMP's ultimate refusal to lease to Plaintiff had no connection to the District other than Plaintiff's presence here. Five days after signing the lease, Plaintiff had trouble accessing the online portal, prompting him to make multiple inquiries of RPMP via email. Eventually, he was informed via email and a telephone phone call, without any explanation, that RPMP had reneged on the lease of the Vienna Property. *Id.* ¶¶ 23–27. Instead, according to Plaintiff, RPMP asked him for a copy of his resume and a "letter to explain why he was worthy of living on the premises." *Id.* ¶ 26.

This "course of dealing" does not establish a "substantial connection" to the District of Columbia, such that RPMP purposefully availed itself of the benefits and protections of District of Columbia law and should have reasonably anticipated being haled into court here. *See Helmer*, 393 F.3d at 206; *see also Bueno v. La Compania Peruana de Radiodifusion*, *S.A.*, 375 A.2d 6, 8–9 (D.C. 1977) (finding that the "transacting business" prong was not met when the defendant "did not initiate or pursue contract negotiations in the District of Columbia," "[n]o services were to be provided by" the defendant in the District, and "all its duties under the contract were to be performed" outside of the District).

*Section 13-423(a)(3)*.  Subsection (a)(3) permits the exercise of jurisdiction over a person "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia" with respect to a claim for relief.  "Subsection (a)(3) is a precise and intentionally restricted tort section, which stops short of the outer limits of due process, and which confers jurisdiction only over a defendant who commits an act in the District which causes an injury in the District."  *Forras v. Rauf*, 812 F.3d 1102, 1107 (D.C. Cir. 2016) (cleaned up).

Plaintiff fails to allege any act committed by RPMP "in the District" that caused Plaintiff's injury.  Plaintiff claims that RPMP caused his injury by reneging on the lease agreement for the Vienna Property based on Plaintiff's race.  RPMP allegedly carried out that act by locking Plaintiff out of its online portal, Compl. ¶ 23, and then communicating with him through one text message, a single email, and two phone calls on one, or perhaps two, days, *id.* ¶¶ 25–26.  Courts consistently have held in comparable circumstances, however, that limited communications initiated from outside the District of Columbia to a District resident do not qualify as an act "in the District" for purposes of § 13-423(a)(3).  The D.C. Circuit, for instance, has held that multiple phone calls made into the District do not constitute an act within the forum for the purposes of bringing a defamation claim.  *See Tavoulareas v. Comnas*, 720 F.2d 192, 193–94 (D.C. Cir. 1983).  Similarly, the court in *IMark Marketing Services, LLC v. Geoplast S.p.A.* held that phone calls and emails originating in Italy to a distributor's employees in the District of Columbia do not constitute acts "in the District" for a tortious interference claim.  753 F. Supp. 2d 141, 160 (D.D.C. 2010).  And the court in *Naegele v. Alberts* held that a phone call and letter originating in California that were the basis of various tort claims, including malicious prosecution and intentional infliction of emotional distress, "cannot provide a basis for the exercise of personal jurisdiction in the District of Columbia

under section 13-423(a)(3)." 110 F. Supp. 3d 126, 152 (D.D.C. 2015). The facts here compel the same conclusion.

*Section 13-423(a)(4).* Subsection (a)(4) allows for the exercise of personal jurisdiction over a person who "caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia," provided the person also "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from" the District. D.C. Code § 13-423(a)(4). These latter criteria are commonly referred to as "plus factors." *See Akhmetshin v. Browder*, 993 F.3d 922, 925 (D.C. Cir. 2021). The closest Plaintiff comes to addressing these factors is his contention that RPMP's website is "interactive" and, according to the website, "that Washington, D.C. is an 'Area Served' by [RPMP's] operations." Pl.'s RPMP Opp'n at 8. But courts in this District have held that "[m]ere interactivity" of a website is not enough to establish a "plus" factor. *See Groop Internet Platform Inc. v. Psychotherapy Action Network*, No. 19-cv-1854 (BAH), 2020 WL 353861, at *6 (D.D.C. Jan. 21, 2020); *Parisi v. Sinclair*, 806 F. Supp. 2d 93, 97 (D.D.C. 2011). "[A]t least some other non-internet related contacts between the defendant and the forum" are required. *Parisi*, 806 F. Supp. 2d at 97. The mere fact that RPMP's website identifies Washington, D.C., as an "Area Served" is not enough to establish a non-internet related contact with this jurisdiction. Accordingly, Plaintiff has failed to establish personal jurisdiction over RPMP under § 13-423(a)(4).[1]

*Conspiracy Jurisdiction under § 13-423(a)(1) and (a)(3).* In addition to arguing that RPMP and Blackwood *directly* transacted business in the District of Columbia by offering and

---

[1] The above discussion has focused exclusively on RPMP, and has made no mention of Blackwood, because Plaintiff makes no argument as to Blackwood and the long-arm statute. Pl.'s RPMP Opp'n at 7–10. Additionally, the Complaint makes no specific allegation as to Blackwood's role in the alleged discriminatory conduct. He merely identifies Blackwood as the President of RPMP, Compl. ¶ 11, and otherwise only makes conclusory assertions about his participation in the denial of his lease, *see id.* ¶ 31. The court cannot exercise jurisdiction over Blackwood based on such paltry allegations under any of the long-arm subsections.

then reneging on the lease for the Vienna Property, Plaintiff also asserts that "Section 13-423(a)(1) authorizes the court to exercise personal jurisdiction over a defendant who, whether 'directly or by an agent' (*in this case, a co-conspirator*), 'transact[s] any business in the District of Columbia.'" Pl.'s RPMP Opp'n at 9–10 (emphasis added).   He makes a similar argument as to conspiracy jurisdiction under § 13-423(a)(3).   *See id.* at 10.

Under a conspiracy theory of jurisdiction, personal jurisdiction can be exercised over a defendant who does not act in the District of Columbia if a co-conspirator does so.   *See Second Amend. Found.*, 274 F.3d at 523–24.   To prevail on such theory, a plaintiff must allege: "(1) the existence of a civil conspiracy . . . , (2) the defendant's participation in the conspiracy, and (3) an overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy."   *FC Inv. Grp. LC,* 529 F.3d at 1096 (alteration in original) (internal quotation marks omitted).

There is a heightened standard for pleading conspiracy jurisdiction.   A plaintiff must "plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy" in order to establish conspiracy jurisdiction over a defendant.   *Companhia Brasileira Carbureto de Calicio v. Applied Indus. Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011) (internal quotation marks and emphasis omitted).   This particularity requirement is "strictly enforced."   *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 141 (D.D.C. 2004).

To support his theory, Plaintiff points the court to paragraphs 7 and 12 of his Complaint. Those paragraphs identify two possible co-conspirators:  Defendant Frances Kang, who owned the Vienna Property (paragraph 7) and Defendant Keller Williams (paragraph 12).   For the reasons explained below, Plaintiff has failed to state an FHA claim against Keller Williams, so its conduct

cannot supply the basis for conspiracy jurisdiction.  So, the court here focuses on the allegations against Kang.

Plaintiff has alleged no facts with particularity that plausibly establish Kang as a member of any civil conspiracy or that Kang took any overt act within the District.  Paragraph 7 states that "[t]he intentional conduct and civil conspiracy with co-Defendant Kang Frances aka Frances Kang left the Plaintiff without a residence."  That, however, is a legal conclusion that is not sufficient to establish conspiracy jurisdiction.  *See Second Amend. Found.*, 274 F.3d at 524.  Although Plaintiff does not cite them, the Complaint's factual assertions as to Kang are not enough either.  Plaintiff alleges Kang is a resident of California, who co-owns the Vienna Property with the Kang Frances Living Trust.  Compl. ¶¶ 9, 15.  He also contends that Kang approved his application to lease the property.  *Id.* ¶ 20.  But that is all.  Those are the only allegations that Plaintiff pleads with particularity as to Kang.  Those allegations do not establish Kang as either a participant in an unlawful conspiracy or a person who "enter[ed] the forum and engaged in conspiratorial acts." *Second Amend. Found.*, 274 F.3d at 523.  Plaintiff's conspiracy theory of jurisdiction therefore fails.

### C.

Plaintiff requests jurisdictional discovery if the court concludes that personal jurisdiction has not been established.  Pl.'s RPMP Opp'n at 10.  "[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). The burden to make such a showing is not a heavy one.  *See Urquhart-Bradley v. Mobley*, 964 F.3d 36, 49 (D.C. Cir. 2020) (deeming sufficient to secure jurisdictional discovery a plaintiff's request for discovery into the defendant's "contacts with [the District of Columbia] through his

role in leading the Company's business activities [there], and his involvement in the discriminatory employment actions taken against [the plaintiff]").  Here, however, Plaintiff has made no effort whatsoever to "demonstrate" how he would be aided by jurisdictional discovery.  Indeed, he does not devote even a single line in his opposition to identify what type of jurisdictional discovery he would seek.  *See* Pl.'s RPMP Opp'n at 10.  The entirety of his request is that, as an alternative to dismissal, the court "grant Plaintiff's request for jurisdictional discovery if this Court for any reason deems that jurisdiction has not been established."  *Id.*  That is not enough to satisfy even his light burden.  Plaintiff's request for jurisdictional discovery is denied.

### III.

The court now turns to Defendants Keller Williams and Penn's motion to dismiss the FAC under Rule 12(b)(6).  To overcome a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility is achieved when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The allegations must be "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]."  *Id.*

For a complaint to state a violation of the FHA, a plaintiff must "plead facts establishing . . . that each defendant acted with discriminatory purpose, which requires more than intent as volition or intent as awareness of consequences."  *Karim-Panahi v. 4000 Mass. Apartments*, 302 F. Supp. 3d 330, 337 (D.D.C. 2018) (internal quotation marks omitted).

Here, Plaintiff's FAC fails to plead any facts that would allow the court to plausibly infer that either Keller Williams or Penn violated the FHA.[2]  FAC ¶¶ 7, 12, 32.  The only specific

---

[2] The FAC also makes stray references to Keller Williams and Penn engaging in a "civil conspiracy," FAC ¶ 12, but Plaintiff fails to actually include either a standalone claim for conspiracy or otherwise meaningfully develop the theory

allegations made against them are that Plaintiff spoke to Penn after he was rejected from leasing the Vienna Property; that during their conversation, he described the demands made of him and expressed the belief he was the victim of race discrimination, and Penn agreed with that assessment; and that Penn responded that she would advise her managers at Keller Williams of his concerns, but Keller Williams "took no action." *Id.* ¶¶ 4, 27, 32.  In sum, Plaintiff's allegations against Keller Williams and Penn are that they "witnessed the violations occurring" and, despite serving as the agent for Plaintiff, "took no action. . . . to protect his interest." *Id*. ¶ 32.  But merely bearing witness to an alleged violation cannot create liability under the FHA.  Nor will a defendant be held liable for the failure to act by a person who does not control the harasser.  *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72–81 (2d Cir. 2021) (en banc) (assuming, without deciding, "that deliberate indifference may be used to establish liability under the FHA when a plaintiff plausibly alleges that the defendant exercised substantial control over the context in which the harassment occurs and over the harasser," and affirming dismissal of FHA claim against a landlord who was alerted to discrimination by a tenant and failed to respond or otherwise intervene).

With no facts pleaded to make out a cognizable claim of racial discrimination under the FHA against Keller Williams and Penn, their Motion to Dismiss is granted.

---

of liability as to the other claims, so the court need not consider it here.  *See Karim-Panahi*, 302 F. Supp. 3d 330, 337–38 (D.D.C. 2018) ("Plaintiff's conspiracy claim is based on nothing more than vague and conclusory allegations about the defendants' discrete decisions. . . . [T]he mere repetition of a conclusory statement that a conspiracy exists and that all the alleged events occurred as a result of a conspiracy are insufficient as a matter of law." (internal quotation marks omitted)).

**IV.**

For the foregoing reasons, Defendants RPMP, Blackwood, Keller Williams, and Penn's respective Motions to Dismiss, ECF Nos. 4, 15, are granted.

Dated:  April 27, 2022

_____
Amit P. Mehta
United States District Court Judge